```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
MICHAEL SHAMCIYAN,                                               :
                                                                 :
                              Plaintiff,                         :
                                                                 :      22 Civ. 2122 (JPC)
               -v-                                               :
                                                                 :      OPINION AND ORDER
                                                                 :
ACACIA NETWORK, INC. et al.,                                     :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff Michael Shamciyan brings this action against his former employer, Defendant Acacia Network, Inc. ("Acacia"), as well as a former supervisor, Defendant Michelle Matics, for discrimination, retaliation, a pay disparity on the basis of various protected classes, and a failure to pay wages under federal, state, and New York City law. Shamciyan brings his claims under 1) 42 U.S.C. § 1981 for race discrimination and retaliation ("First Cause of Action"); 2) the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, for retaliation and discrimination on the basis of race, religion, national origin, and age ("Second Cause of Action"); 3) the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.*, for retaliation and discrimination on the basis of race, religion, national origin, and age ("Third Cause of Action"); and 4) the New York Labor Law for providing unequal pay on the basis of a protected class ("Fourth Cause of Action") and for failure to pay wages ("Fifth Cause of Action"). Defendants have moved to dismiss the first four of these Causes of Action. Because the Court rejects Defendants' argument that Shamciyan cannot establish but-for causation to support a race discrimination claim under section 1981 because he also has alleged other types of discrimination,

the Court denies the motion with respect to the First Cause of Action. Shamciyan has agreed to withdraw his Second and Third Causes of Action, so the Court grants the motion to dismiss those Causes of Action. Finally, because Shamciyan has failed to allege that he was paid less than a similarly situated comparator outside of any of his protected classes, the Court dismisses the Fourth Cause of Action.

## I. Background

**A.     Facts[1]**

Shamciyan, a Persian, Jewish, 56-year-old man, SAC ¶ 18, began working for Acacia in March 2010 as a Nursing Office Coordinator, *id.* ¶ 32. Acacia is "the largest Hispanic-led nonprofit in [New York], serving over 150,000 individuals every year." *Id.* ¶ 21. Upon Shamciyan's hiring, Adrienne Rosell, an administrator at Acacia, told him that his position was not unionized. *Id.* ¶ 33. He "was in charge of payroll, shift scheduling for 80-90 employees, handling license recertifications, preparing job opening forms, and making sure that every employee's contact records were up to date and licenses were compliant." *Id.* ¶ 39. He was paid a starting salary of $47,263.00. *Id.* ¶ 40.

Shamciyan alleges that "he was one of the only employees who was not Hispanic," *id.* ¶ 34, and that other employees "routinely commented on his religion with surprise" including one who told him, upon learning he was Jewish, "ew, you are a Jew?!", *id.* Shamciyan was "one of the few Nursing office staff that were over the age of forty and was also the only or one of very few Jewish employees." *Id.* ¶ 38.

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Second Amended Complaint. Dkt. 20 ("SAC"); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

Shamciyan further alleges that "Hispanic employees were treated better than non-Hispanic employees" including by being paid overtime that he was not paid. *Id.* ¶ 35. When he complained about his lack of overtime pay, he was told it was because he was not a union employee. *Id.* Nevertheless, Shamciyan worked roughly five hours of overtime per week, for which he was not provided overtime pay. *Id.* ¶ 36.

Acacia employed a performance evaluation system that ranked employees on various metrics on a scale of 1-4. *Id.* ¶ 44. Shamciyan received a 3.28 evaluation in 2012-2013, a 3.47 in 2013-2014, and a 3.94 in 2018. *Id.* ¶ 43.

In 2013, Shamciyan required surgery for a brain tumor, which would require six weeks of recovery time. *Id.* ¶ 55. Acacia asked him to complete those six weeks of work prior to his surgery. *Id.* ¶ 56. Shamciyan completed the work that was requested, but Acacia still repeatedly contacted him while he was on leave and did not provide him with pay for that time. *Id.* ¶ 58. Shamciyan claims that no Hispanic workers were subject to similar requirements for medical leave. *Id.* ¶ 59. Another incident occurred in 2019, when Shamciyan was in a car accident and a few days later sought to leave work to go to the emergency room for a severe headache and was told he needed to complete his work first. *Id.* ¶¶ 122-130. Shamciyan required surgery again in 2019, and this time was told "there will be consequences" if he took time off without having his work done for the period of time when he was out. *Id.* ¶ 148. Shamciyan worked overtime to satisfy this requirement but was not paid at an overtime rate. *Id.* ¶ 149. Other employees were offered coverage when they needed to take time off work for a medical condition. *Id.* ¶ 150.

Shamciyan further alleges he was passed over for promotions at a more frequent rate than Hispanic employees over the course of his employment. *Id.* ¶¶ 60-61. In 2017, he applied for a "Site Manager" position for which he interviewed in competition with a female Hispanic

colleague. *Id.* ¶¶ 65-66. Shamciyan received the promotion, though without an increase in pay, and was confused that the other candidate seemed to have heard about the promotion before he heard about it. *Id.* ¶¶ 66-67. "Hispanic employees in manager positions were making between $65,000-$70,000, which was significantly higher than what Plaintiff was making." *Id.* ¶ 68. Shamciyan ultimately declined the promotion. *Id.*

In the summer of 2017, the air conditioning in Shamciyan's office stopped working and his requests to have it fixed were denied by Acacia. *Id.* ¶ 69. Acacia also denied his request to sit in a different room on the grounds that "'auditors' were coming once a week to monitor who was sitting where.'" *Id.* ¶¶ 71-72. These auditors apparently never came. *Id.* ¶ 73. The room reached temperatures of over 100 degrees. *Id.* ¶ 77. In particular, Shamciyan was told that he could not sit in the finance department because he was in a different department, despite the fact that Hispanic members of other departments were allowed to sit there. *Id.* ¶¶ 74-75. The air-conditioning issues continued into the summers of 2018 and 2019. *Id.* ¶¶ 111-113, 143-144.

In 2018, Shamciyan applied for an educational scholarship offered by Acacia and was the only applicant to apply by the deadline. *Id.* ¶¶ 86-88. His application was denied and the scholarship was given to a Hispanic employee. *Id.* ¶¶ 89-91. Shamciyan was informed that he "didn't make the qualifications." *Id.* ¶ 91.

Defendant Michelle Matics was hired by Acacia in 2018 as the Assistant Vice President of Skilled Nursing & Older Adult Services. *Id.* ¶ 94. Matics "was immediately hostile" to Shamciyan, including frequently blaming him for the office "being over-budget, even though his job responsibilities did not include balancing or managing the budget." *Id.* ¶¶ 96-97. Shamciyan "noticed that Defendant Matics treated Hispanic employees better than non-Hispanic employees" including by providing them overtime pay, *id.* ¶ 101, and by not speaking to them in a "hostile and

disrespectful manner" as she did to Shamciyan, *id.* ¶¶ 102-104. Matics "constantly gave Plaintiff extra assignments and deadlines that were not part of his job description" and then "regularly reprimanded" him for working through lunch to complete this work. *Id.* ¶¶ 105, 109. Despite working through lunch, Shamciyan had lunch breaks deducted from his paycheck. *Id.* ¶ 107. Matics and Acacia also "did not give [Shamciyan] any back-up person, which meant he could not take off for illness, injury or even Jewish holidays." *Id.* ¶ 109.

In August 2018, January 2019, and February 2019, Shamciyan tried repeatedly to bring his complaints to human resources but was unsuccessful. *Id.* ¶¶ 114-121. In the summer of 2019, he attempted to voice his complaints to Acacia's Vice President, Maria Del-Carmen Arroyo. *Id.* ¶¶ 120, 136-137. When Shamciyan told Arroyo that he had a complaint about Matics, she responded that "You better not talk about Michelle Matics" and "instructed [him] to stop sending emails to HR and upper management." *Id.* ¶ 138.

In August 2019, Shamciyan overheard Matics on the phone say that Shamciyan "was in his mid-forties and that he needed to speed things up." *Id.* ¶ 131. Matics regularly told Shamciyan he was too slow and inefficient. *Id.* ¶ 135.

In September 2019, Shamciyan had a meeting with Matics to "review his job description and current duties." *Id.* ¶ 145. At this meeting, he was "reprimanded and spoken down to with extreme hostility" and was told he was "replaceable" and "not special." *Id.* ¶ 145. He was then assigned an "advisor" who would "review and report on his work quality on a monthly basis." *Id.* ¶ 146. Shamciyan was the only employee with such a monthly reporting requirement. *Id.*

Also in September 2019, Shamciyan received a poor performance evaluation in the form of a "supervision record" which required him to attend a class to improve his "communication skills." *Id.* ¶ 151. Shamciyan's supervisor is alleged to have "issued this negative performance

5

evaluation at the direction of Defendant Matics." *Id.* ¶ 153.  The supervisor later told Shamciyan that he "needed to be more diplomatic, needed to develop tact, and again reprimanded Plaintiff for not taking lunch breaks, despite the fact that he was told he would be written up if he did not complete his unfairly heavy workload on a timely basis." *Id.* ¶ 155.  Around the same time, Shamciyan was kicked out of his office without notice and was required to work in a busy conference room.  *Id.* ¶¶ 157-161.  Shortly afterward, Acacia's medical director told Shamciyan that "he believed that Plaintiff was treated differently because he was Jewish," saying "I think that they are doing this to you because you are Jewish" and that the medical director himself was "half Jewish, but specifically did not tell Defendants this because he did not want them know, implying that he was afraid of backlash and negative treatment." *Id.* ¶¶ 162-163.  This medical director and others knew that Shamciyan would be removed from his office before he did.  *Id.* ¶¶ 162, 164.

Ultimately, Shamciyan had a meeting with Matics and a union representative on October 31, 2019 and was told that his position was and always had been a union position.  *Id.* ¶ 166. Matics then told Shamciyan his pay would be reduced and his hours extended.  *Id.* ¶¶ 169-170. Shamciyan submitted a resignation letter the next day.  *Id.* ¶ 172.

**B.    Procedural History**

Shamciyan initiated this action on January 3, 2022 by filing a summons with notice in the Supreme Court of the State of New York, Bronx County.  Dkt. 1 ¶ 3.  He filed a complaint on February 24, 2022, *id.* ¶ 4, and an amended complaint the next day, *id.* ¶ 5.  On March 15, 2022, Defendants removed the case to federal court in this District.  Dkt. 1.  The case was assigned to the undersigned on March 16, 2022.  Case Opening Initial Assignment Notice dated Mar. 16, 2022. After Defendants expressed their intent to move to dismiss in part, Dkt. 13, the Court held a conference on June 28, 2022 at which it granted Shamciyan leave to file a Second Amended

Complaint and stayed discovery pending the resolution of any motion to dismiss. Minute Entry dated June 28, 2022.

Shamciyan filed the Second Amended Complaint on July 19, 2022. Dkt. 20. Defendants filed their motion to dismiss on September 23, 2022. Dkts. 25, 26 ("Motion"), 27, 28. That motion seeks dismissal of the first four causes of action in the Second Amended Complaint. Shamciyan opposed that motion on November 18, 2022. Dkt. 30 ("Opposition"). Defendants filed their reply on November 30, 2022. Dkt. 31.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In making this determination, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), but it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Discussion

**A.   Second and Third Causes of Action**

Shamciyan does not oppose Defendants' motion to dismiss his Second and Third Causes of Action, which allege violations of the New York State Human Rights Law and New York City Human Rights Law. Opposition at 1. The Court therefore grants the motion to dismiss with

7

respect to the Second and Third Causes of Action, and dismisses those Causes of Action without prejudice. *See Davis v. Dep't of Educ. of City of New York*, No. 10 Civ. 5213 (DF), 2012 WL 4713610, at *5 (S.D.N.Y. Sept. 28, 2012) ("Where a plaintiff voluntarily withdraws a claim in the course of litigation, it is generally appropriate for the Court to dismiss that claim without prejudice.").

**B.     42 U.S.C. § 1981**

In his First Cause of Action, Shamciyan brings claims under 42 U.S.C. § 1981 for discrimination and retaliation against Defendants. SAC ¶¶ 196-199. Defendants argue that Shamciyan has failed to plead the causation element of these claims because he alleges that he suffered discrimination on the basis of not only his race, but also his age, religion, and national origin. Motion at 12-13. Because Shamciyan asserts that he was discriminated against for multiple reasons, Defendants argue, he cannot show that race was a but-for cause of any act of discrimination.[2]

Both discrimination and retaliation claims under section 1981 have a causation requirement, though those requirements differ. Section 1981 provides, in relevant part, that "[a]ll persons . . . shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Thus, to establish a claim under section 1981, a plaintiff must show (1) that he or she is a member of a racial minority, (2) the defendant's "intent to discriminate

---

[2] Defendants also appear to argue in passing in the introduction to their brief that Shamciyan's section 1981 claim is somehow barred by the doctrine of election of remedies. Motion at 2. But Defendants cite no authority for this proposition and do not present an argument in support with any detail in either their opening or reply brief. The Court therefore does not address this argument further. *See York v. Assoc. of Bar of City of N.Y.*, 286 F.3d 122, 126-27 (2d Cir. 2002) (discussing election of remedies argument as grounded in the text of the NYSHRL and NYCHRL).

on the basis of race," and (3) "discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).[3]  The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).  Additionally, for an individual to be liable under section 1981, that person must be "personally involved in the alleged deprivation" of rights.  *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

By applying to "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship," section 1981 extends to discrimination in employment.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  A claim for employment discrimination under section 1981 requires a plaintiff to "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  A plaintiff must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (internal quotation marks omitted).  "[D]iscriminatory intent is a necessary element of a § 1981

---

[3] Given the factual allegations made by Shamciyan in this case, the Court emphasizes that section 1981 requires a plaintiff to show that the defendant's acts were "*racially* motivated" both because the text's "reference to rights enjoyed by white citizens establishes the racial character of the rights being protected" and because "Section 1981 was intended to combat racial or ethnic discrimination, nothing more."  *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) (emphasis added) (internal quotation marks omitted); *accord Sykes v. Rachmuth*, No. 22 Civ. 3989 (JPC), 2023 WL 2752865, at *4 n.4 (S.D.N.Y. Mar. 31, 2023).

claim." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006); *Patterson*, 375 F.3d at 226 ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional."). And the relevant standard for such discriminatory intent is but-for causation. *Comcast Corp. v. Nat. Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (applying the but-for standard to section 1981); *see also Europe v. Equinox Holdings, Inc.*, No. 20 Civ. 7787 (JGK), 2022 WL 4124763, at *5 (S.D.N.Y. Sept. 9, 2022).

To infer discriminatory intent at the motion to dismiss stage, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 87 (alteration in original) (quoting *Twombly*, 550 U.S. at 570). The plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. One method of showing discriminatory intent is to show disparate treatment between plaintiff and a similarly situated employee outside of the protected group. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'— is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))).

To plead a retaliation claim under section 1981, "a plaintiff must plausibly plead: '(1) he participated in a protected activity known to defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action.'" *Dodd v. My Sisters' Place, Inc.*, No. 21 Civ. 10987 (VB), 2023 WL

251954, at *5 (S.D.N.Y. Jan. 18, 2023) (quoting *Patel v. City of New York*, No. 12 Civ. 6312 (MGC), 2013 WL 1500432, at *1 (S.D.N.Y. Apr. 10, 2013), *aff'd*, 699 F. App'x 67 (2d Cir. 2017)). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Id.* The "causal connection" requires but-for causation, meaning that "the adverse action would not have occurred in the absence of the retaliatory motive." *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 7 (2d Cir. 2017) (internal quotation marks omitted).

Defendants argue that "Plaintiff must show that, but for being Persian, he would not have experienced the discrimination and retaliation he alleges,"[4] Motion at 12, and that he fails to satisfy this standard because he has alleged multiple types of discrimination, *id.* at 12-13. *See id.* at 13 ("Plaintiff's explicit references to his age, religion, and national origin as additional bases for his discrimination claims directly undercut any claim that his race was the but-for cause of any injury he allegedly suffered."). That argument gets it not quite right. Defendant is correct that Shamciyan must allege that but for his race, he would not have experienced the discrimination he alleges. But with respect to retaliation, the required allegation is slightly different. Shamciyan instead must allege that but for an intent to retaliate for his racial discrimination complaint, he would not have suffered an adverse employment action. To satisfy this requirement, Shamciyan must only have

---

[4] The parties dispute whether Shamciyan may allege discrimination based on the fact that he is Jewish to satisfy the requirement that discrimination under section 1981 be race based. Opposition at 4 n.3; Reply at 3. Defendants seem to agree that the Second Circuit has held that that people of Jewish descent are protected by section 1981. Reply at 3; *see United States v. Nelson*, 277 F.3d 164, 177 (2d Cir. 2002). But Defendants claim that Shamciyan alleges only that he is religiously Jewish, rather than a member of the "Jewish race," and so he is not entitled to the protections of section 1981. Reply at 3. Shamciyan's Second Amended Complaint clearly states that he is a "56-year-old, Jewish male." SAC ¶ 18. It does not state that Shamciyan is *only* religiously Jewish, and Shamciyan's arguable references to his Jewish faith, *id.* ¶¶ 109, 113, do not somehow show that he is only religiously Jewish as it is entirely consistent to think that someone who is racially Jewish is also an adherent of Judaism. The Court therefore determines that Shamciyan has sufficiently alleged that he is Jewish to afford him protection from race-based discrimination under section 1981.

11

had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). In other words, to support a retaliation claim under section 1981, Shamciyan needs only to allege a good faith, reasonable belief that he had been subject to racial discrimination underlying his prior complaint, not that he necessarily did experience such discrimination within the formal requirements of section 1981.

This distinction makes a difference because Defendants do not argue that Shamciyan failed to allege that he engaged in an activity protected under section 1981. As alleged, he at least attempted to complain both to human resources about "his workload, the fact that he was the only employee with no back up person, the fact that he was regularly assigned unpaid overtime work, and the fact that he was not paid while forced to work during lunch, as well as Defendant Matics' discriminatory treatment and hostility," SAC ¶ 114, and to Arroyo about similar complaints, *id.* ¶ 138. He alleges that human resources never responded to him, and Arroyo explicitly shut down his complaints and told him to stop sending emails to human resources. *Id.* ¶¶ 114-121, 138. Defendants do not argue that this was not protected conduct, or that Shamciyan did not have a good faith, reasonable belief that he was being subject to racial discrimination. They claim only that his allegations that he was the victim of race-based discrimination, as well as age-based, religion-based, and national origin-based discrimination, necessarily mean that he has failed to allege that his race was the but-for cause of the discrimination. That argument misstates the causation requirement for a section 1981 retaliation claim and is unavailing under the correct requirement, and so the Court denies Defendants' motion with respect to Shamciyan's section 1981 retaliation claim.

The Court turns next to Defendants' argument in the section 1981 discrimination context. Again, the Court understands Defendants to argue that because Shamciyan alleges his discrimination was caused by his race, age, national origin, and religion, it cannot be the case that his race alone was a but-for cause of any discrimination. But as a pure conceptual matter, an action may have multiple but-for causes. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n.5 (2d Cir. 2013) ("However, a plaintiff's injury can have multiple but-for causes, each one of which may be sufficient to support liability. Requiring proof that a prohibited consideration was a but-for cause of an adverse action does not equate to a burden to show that such consideration was the 'sole' cause." (internal quotation marks omitted)). Had Shamciyan experienced discrimination only because he was *all* of Persian, Iranian descent, Jewish, and fifty-six years old, each of those characteristics could be a but-for cause of the discrimination. It therefore does not defeat Shamciyan's section 1981 discrimination claim to allege that he was also the victim of other sorts of discrimination.[5]

Since the Court rejects Defendants' argument that Shamciyan's section 1981 claims of race-based discrimination and retaliation fail because he also has alleged other types of discrimination, the Court denies the motion to dismiss the First Cause of Action.

---

[5] Defendants rely on *Postell v. Fallsburg Libr.*, No. 20 Civ. 3991 (NR), 2022 WL 1092857 (S.D.N.Y. Apr. 8, 2022), to support their argument to the contrary. Motion at 13. In that case, the court determined that the plaintiff had failed to allege but-for causation for a section 1981 claim because the plaintiff alleged discrimination "because of his race, gender, or age." *Postell*, 2022 WL 1092857, at *9. The court commented that this allegation "casts doubt on Section 1981's applicability to his claims, as it is well settled that 42 U.S.C. § 1981 provides no claim for gender or age." *Id.* But the allegation in that case was disjunctive, stating in essence that any of race, gender, or age could have been the cause of the discrimination. Shamciyan has presented a conjunctive motive allegation, the discrimination was based on his "age, race, national origin, and religion." *E.g.*, SAC ¶ 146. But more importantly, as discussed *supra*, the Second Circuit has made clear that an injury can have multiple but-for causes, with each supporting liability.

C.   **New York State Equal Pay Act**

Shamciyan's Fourth Cause of Action alleges that Defendants violated New York Labor Law section 194 by paying "non-Hispanic employees and/or non-Christian employees and/or employees over the age of forty less than Hispanic, Christian, and/or younger employees for work that required equal skill, effort, and responsibility." SAC ¶ 212. Defendants argue that Shamciyan has failed to sufficiently plead the elements of such a claim, because he has failed to identify a comparator outside of his protected classes who was paid a higher wage for performing equal work. Motion at 13.

To establish an equal pay violation of the New York Labor Law, a plaintiff must show that "(1) the employer pays different wages to employees [outside the protected class]; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015).[6]  A plaintiff "need not demonstrate that [his] job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (internal quotation marks omitted).[7]

---

[6] Prior to October 8, 2019, New York Labor Law section 194 prohibited pay differentials only on the basis of sex. *See* 2019 N.Y. Laws Chap. 93. The statute now prohibits such differentials on the basis of "protected class or classes." N.Y. Labor L. § 194 ("No employee with status within one or more protected class or classes shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for . . ."). Defendants do not argue that the protected classes asserted by Shamciyan do not fall within the scope of the statute, nor do they argue that the pre-amendment version of the statute applies to the conduct in this case, which allegedly occurred from 2012 to 2019.

[7] *Lavin-McEleney* dealt with the federal Equal Pay Act, but the Second Circuit has stated that the Equal Pay Act and New York Labor Law section 194 are analyzed under the same standards. *Talwar*, 610 F. App'x at 30 n.2.

Shamciyan clearly alleges his own duties while employed by Acacia: "he was in charge of payroll, shift scheduling for 80-90 employees, handling license recertifications, preparing job opening forms, and making sure that every employee's contact records were up to date and licenses were compliant." SAC ¶ 39. Additionally, he alleges that his starting salary was $47,263.00. *Id.* ¶ 40. Other allegations in the Second Amended Complaint lay out Shamciyan's claims that other employees were paid more than him. *See id.* ¶¶ 101 ("Plaintiff noticed that Defendant Matics treated Hispanic employees better than non-Hispanic employees . . . including but not limited to Defendant Matics allowing Hispanic employees to receive overtime pay but excluding Plaintiff from this benefit."), 107 ("Plaintiff was regularly deprived of at least 5 hours of pay each week until the end of his employment from this unlawful deduction, in addition to any hours worked over 40 hours per week. Upon information and belief, no Hispanic employees had these deductions taken out of their paychecks."), 167 ("Plaintiff was never made whole for being left out of the union since his hire, including but not limited to lump-sum payment that employees received for previous violations of the union contract during the years Plaintiff was employed with Defendants."). These allegations fall short of alleging a New York Labor Law equal pay violation, however, because they say nothing about the work of any of the employees to whom Shamciyan compares himself. Nowhere in the Second Amended Complaint does Shamciyan describe in any detail any individual or even group of individuals that performed "equal work" or even that was in a "substantially similar" position.

Shamciyan argues that "his Hispanic colleagues were all direct comparators." Opposition at 9. But this argument ignores that the Second Amended Complaint lacks allegations as to what work those potential comparators performed. Courts in this District have dismissed pay differential claims that make only similar allegations when they fail to "set forth any facts to show

15

how [the plaintiff] was similarly situated" to his comparators.  *Werst v. Sarar USA Inc.*, No. 17 Civ. 2181 (VSB), 2018 WL 1399343, at *8 (S.D.N.Y. Mar. 16, 2018); *see also Eng v. City of New York*, No. 15 Civ. 1282 (DAB), 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) ("Plaintiff provides no factual allegations that would allow the Court to compare her job duties, skills and experience with those of the comparators."), *aff'd*, 715 F. App'x 49 (2d Cir. 2017); *Von Maack v. Wyckoff Heights Med. Ctr*, No. 15 Civ. 3951 (ER), 2016 WL 3509338, at *8 (S.D.N.Y. Mar. 16, 2018) (noting that untimely pay differential claims would still be dismissed even if timely because the "Complaint is devoid of any allegations going to whether Plaintiff and [a comparator] performed a 'substantially similar' job").

Shamciyan also argues that he "was doing the work of a manager" and that he "alleged 'substantially similar' work as Hispanic employees who were paid at a higher rate who had the managerial titles."  Opposition at 10.  But the Second Amended Complaint does not state that Shamciyan's duties were "the work of a manager" nor does the Second Amended Complaint lay out in any detail the duties of any of the other managers to whom Shamciyan compares himself.  Because the Second Amended Complaint is devoid of such details, it fails to state a claim of unequal pay under New York Labor Law section 194.

The Court therefore grants the motion to dismiss the Fourth Cause of Action.

D.     **Leave to Amend**

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Shamciyan has not asked the Court for leave to amend his Complaint.  "But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*."  *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18

(S.D.N.Y. Mar. 31, 2022) (internal quotation marks omitted) (collecting cases).  When deciding whether to grant *sua sponte* leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility."  *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020).  Having considered these factors, the Court will not grant leave to amend.  In particular, Shamciyan twice previously has amended his complaint, Dkt. 1 ¶ 5; Dkt. 20, the second time after Defendants filed a letter with the Court indicating their intent to file a motion to dismiss and stating that Shamciyan had failed to identify a substantially similar comparator for his pay differential claim, Dkt. 8 at 3 n.5.

### IV.  Conclusion

For the reasons stated previously, the Court grants the motion to dismiss with respect to the Second, Third, and Fourth Causes of Action and denies it with respect to the First Cause of Action.  The stay of discovery is ended.  By October 3, 2023, the parties shall file a proposed case management plan and scheduling order, a template of which is available at https://www.nysd.uscourts.gov/hon-john-pcronan.  The Court will hold a telephonic status conference on October 10, 2023, at 10:30 a.m. to discuss that plan.  At the scheduled time, counsel for all parties should call (866) 434-5269, access code 9176261.

The Clerk of Court is respectfully directed to close the motion pending at Docket Number 25.

SO ORDERED.

Dated: September 23, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge